UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:08-cr-00093-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Charles Head, | |
| Defendant. | |

Defendant Charles Head moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. For the reasons below, the court **denies** the motion.

I.  BACKGROUND

In December 2013, a jury convicted Head of multiple counts of mail fraud and conspiracy to commit mail fraud in two related criminal cases. *See* Case Nos. 2:08-cr-093-KJM (*Head I*) and 2:08-cr-116-KJM (*Head II*). The court sentenced him in both cases on September 3, 2014, to a total term of 420 months imprisonment, which he is now serving. *Head I*, ECF No. 977; *Head II*, ECF No. 581. In February 2019, Head moved to vacate his conviction and sentence under 28 U.S.C. § 2255. *See* Mot., ECF No. 1617 (*Head* I), Mem. Supporting Habeas Petition (Mem.), ECF No. 1621 (*Head I*).[1] Head has also filed a supplement, Supp. to Mem., ECF No 1634,

---

[1] Head also moved to vacate his conviction and sentence in *Head* II. ECF No. 861 (*Head II*). This court denied the motion, ECF No. 1045 (*Head* II), and the Ninth Circuit has denied

1

1  declaration, Decl., ECF No. 1683, and multiple requests to expand the record in support of his
2  motion, Req. to Expand One, ECF No. 1821; Req. to Expand Two, ECF No. 1836.  The
3  government opposes the motion.  Opp'n, ECF No. 1780; Supp. Opp'n, ECF No. 1851.  Head has
4  replied.  Reply, ECF No. 1867.

Proceeding pro se, Head argues there are five separate grounds on which he is entitled to relief: (1) ineffective assistance of pretrial counsel, Mr. Tedmon; (2) ineffective assistance of trial counsel, Mr. Tedmon; (3) ineffective assistance of sentencing counsel, Mr. Tedmon; (4) ineffective assistance of appellate counsel, Mr. Morris; and (5) the government's violation of his Sixth Amendment rights.  Mot.; Mem. at 2–3.  Within each category, Head brings multiple distinct claims for relief.  The court will first examine Head's ineffective assistance of counsel claims before moving to his Sixth Amendment claim.

## II.    SECTION 2255 LEGAL STANDARD

A federal prisoner collaterally attacking the validity of his conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence under 28 U.S.C. § 2255, filed in the sentencing court.  *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988).  Under § 2255, the court may grant relief "if the sentence was imposed in violation of the Constitution or laws of the United States."  *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (citations omitted).

District courts reviewing § 2255 petitions must "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).  In determining whether the motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted."  *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).  "Under this standard, a district court may summarily dismiss a § 2255 motion only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'"  *Withers*, 638 F.3d at 1062–63. "Conclusory

---

Head's request for a certificate of appealability, Order, *United States of America v. Charles Head*, Case No. 22-15964 (9th Cir. Sept. 15, 2023), ECF No. 20.  The remainder of this order will reference docket numbers in *Head I* only, unless otherwise noted.

allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Although the court will not summarily dismiss Head's claims, it denies relief where the record does not support the assertion that a conviction or custodial sentence violates the constitution in some manner, as explained below. *See Neighbors v. United States*, 457 F.2d 795, 795 (9th Cir. 1972) (affirming denial of § 2255 motion in which allegations were conclusory and without support in the record).

### III.    INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim for relief based on ineffective assistance of counsel, a defendant must show: (1) "counsel's representation fell below an objective standard of reasonableness" and (2) counsel's deficient performance was prejudicial to the outcome. *Strickland v. Washington*, 466 U.S. 668, 687–69 (1984). Unlike most other claims raised on collateral review, claims of ineffective assistance of counsel need not be raised on direct appeal first. *Massaro v. United States*, 538 U.S. 500, 509 (2003).

Analyzing the first prong of the *Strickland* test, the court must apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689. In determining whether counsel was within this range, "hindsight is discounted by pegging adequacy to 'counsel's perspective at that time' [that] investigative decisions were made, and by giving deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) (internal citations omitted). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. This standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986). A defendant "must overcome a strong presumption that counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *United States v. Palomba*, 31 F.3d 1456, 1460 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

*Strickland*'s second prong asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Errors by counsel, even if outside the range of reasonable professional assistance, do not warrant setting aside a judgment if the error would have had no effect on the judgment. *Id.* at 691.

Because it is "all too tempting" to "second-guess counsel's assistance after [a] conviction or adverse sentence," *id.* at 689, the *Strickland* test is a high bar, and "surmounting [it] is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). This standard applies regardless of the stage of representation. *See United States v. Birtle*, 792 F.2d 846, 847 (9th Cir. 1986) ("[W]e have applied Strickland 's two-part test to determine if appellate counsel's assistance was ineffective.); *Maria v. Grounds*, No. 13-1183, 2015 WL 4608086, at *6 (C.D. Cal. Mar. 17, 2015), *report and recommendation adopted*, No. 13-1183, 2015 WL 4608304 (C.D. Cal. July 30, 2015), *aff'd sub nom. Maria v. Muniz*, 704 F. App'x 641 (9th Cir. 2017) ("The Strickland test may apply to a claim of ineffective assistance by a lawyer in pretrial proceedings.")

### A. Ineffective Assistance of Pretrial Counsel

Head alleges and argues his pretrial counsel was ineffective because counsel failed to: (1) inform Head about the consequences of pleading guilty versus going to trial, (2) "provide discovery and other evidence" for Head "to make an informed decision as to whether to proceed to trial or plead guilty," (3) file a motion to dismiss "based on a multiplicitous not [d]uplicitous [i]ndictment," (4) "conduct an adequate and independent pretrial investigation" including interviewing identified witnesses and (5) retain specific expert witnesses. Mem. at 2, 11. The court examines each claim in turn.

First, Head argues counsel did not give him the proper information necessary to make an informed decision regarding whether to accept a plea agreement or proceed to trial. Mem. at 11–12. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Head says only that counsel informed Head he

1  "inquired about a plea offer from the government, but he never conveyed a written plea
2  agreement to Head." Mem. at 13. Head does not say counsel received and withheld a formal plea
3  offer, *id.*, and the record does not show the government extended any offer. *Id.* Because Head
4  does not show counsel shirked his duty to communicate any formal offer, he has not shown
5  counsel acted unreasonably, and the court denies relief on this claim.

6  Second, Head argues counsel did not provide him with "all of the discovery items" he
7  requested, and that if he had received this discovery, "he could have further proven his"
8  innocence at trial. Mem. at 13; Reply at 3. But Head has no constitutional right to view
9  discovery materials, *Hinton v. United States*, No. 15-0752, 2015 WL 1943261, at *3 (N.D. Ill.
10 Apr. 29, 2015) (collecting cases), and he does not explain how, by not sharing discovery, counsel
11 acted unreasonably. Moreover, under the second prong of the *Strickland* test, Head does not
12 identify or describe what discovery counsel withheld that, if shared with Head, could have altered
13 the outcome of his trial. Head has not stated a claim for relief, and the court denies relief on this
14 claim. *Withers*, 638 F.3d at 1062.

15 Third, Head argues counsel was ineffective because he filed a motion to dismiss the
16 indictment "based on duplicity in the Indictment," instead of filing a motion based on
17 "multiplicity or double jeopardy." Mem. at 13; Reply at 4–5, 18–58. The Fifth Amendment's
18 guarantee against double jeopardy protects a defendant against a second prosecution for the same
19 offense after acquittal, against a second prosecution for the same offense after conviction, and
20 against multiple punishments for the same offense. *Monge v. Cal.*, 524 U.S. 721, 727–28 (1998).
21 Here, Head asserts the government violated his constitutional rights because the two separate
22 conspiracies brought against Head in two different criminal cases—*Head* I and *Head* II—were
23 the same conspiracy. Mem. at 13–15.

24 Head previously brought this multiplicity argument on appeal, and the Ninth Circuit held
25 "it was not plain error to allow" Head to be tried and convicted of conspiracy and mail fraud in
26 both *Head* I and *Head* II. *United States v. Head*, 700 F. App'x 612, 614–15 (9th Cir. 2017)
27 ("Although the *Head I* and *Head II* conspiracies sought to defraud homeowners using similar
28 methods, the *Head II* conspiracy was sufficiently different in scope and approach that it was at

5

least not plain error to allow Charles Head to be tried in *Head II*."); *see also United States v. Stoddard*, 111 F.3d 1450, 1454 (9th Cir. 1997) (describing the five factors used to analyze whether "'two conspiracy counts charge the same offense and so place the defendant in double jeopardy,'" including the differences in time periods, the coconspirators, and the places the conspiracies allegedly occurred) (quoting *United States v. Guzman*, 852 F.2d 1117, 1120 (9th Cir. 1988)). Head now argues his trial counsel was ineffective in failing to recognize the constitutional violation and move to dismiss the charges against Head on this ground. If, Head argues, counsel had filed a timely motion, he could have appealed any denial immediately, and under a *de novo* standard of review, the Ninth Circuit would have found the two indictments did violate the double jeopardy clause. Mem. at 14–15. In his reply, Head points to various pieces of evidence he believes buttress his claim that the two conspiracies were identical and that counsel thus was ineffective in not raising this claim before trial. Reply at 18–58.

Even assuming Head has shown counsel was objectively unreasonable in failing to bring a double jeopardy motion, Head has not shown that if a court had analyzed the question under a different standard of review, there is a reasonable probability the court would have found a double jeopardy violation. *Strickland*, 466 U.S. at 691. While it is true there is overlap between the conspiracies in *Head* I and *Head* II, separate conspiracies can exist even if the conspiracies took place "at substantially the same time, with some of the same people, [and] to commit similar acts." *United States v. Lorenzo*, 995 F.2d 1448, 1459 (9th Cir. 1993); *see also United States v. Ziskin*, 360 F.3d 934, 944 (9th Cir. 2003) ("'[S]ome interrelationship between conspiracies does not necessarily make them the same criminal enterprise.'" (quoting *Guzman*, 852 F.2d at 1121). A careful review of the facts in both cases leads to the conclusion the conspiracies in *Head* I and *Head* II were sufficiently separate so as not to implicate the double jeopardy clause. For example, although the time periods for both conspiracies overlap, Reply at 18–19, the conspiracy in *Head* I started over a year before the conspiracy in *Head* II, and most fraudulent transactions in *Head* I had already taken place by the time the conspiracy in *Head* II began, Gov't Appellate Brief at 63–64, ECF No. 1780–3. The conspiracies also differed in structure: the conspiracy in *Head* II was broken into "smaller component parts" than in *Head* I, to "better conceal the scheme

6

from victims and lower level employees," *id.* at 67, the compensation of employees in *Head* II was lower than in *Head* I, *id.* at 27, and the fraud proceeds in *Head* II were all funneled together through "accounts [] Head controlled through non-sales agent employees," unlike in *Head* I, *id.* Additionally, although Head identifies several witnesses, including some co-conspirators, who testified in both trials, Reply at 23, 43–48, of the nineteen total defendants between *Head* I and *Head* II, only four were charged in both cases, Gov't Appellate Brief at 68. Because Head cannot show he was prejudiced by counsel's failure to move to dismiss the indictments, the court denies relief on this claim.

Fourth, Head alleges and argues pretrial counsel was ineffective in failing to interview or subpoena key witnesses and in not reviewing all relevant discovery before trial. Mem. at 15–17. Specifically, Head lists eleven witnesses he claims would have been helpful to his defense and that he shared with counsel. *Id.* at 16–17. But Head "has not provided affidavits from any of these individuals that they would have testified on [his] behalf and what they would have testified to." *Lopez v. United States*, No. 03-5204, 2009 WL 1657334, at *14 (E.D. Cal. June 9, 2009); *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988) (failure to call witness did not fall below standard of effective assistance of counsel where there was no record establishing witness would have testified). Head has not claimed the correctional facility where he is housed has stopped him from communicating with these witnesses, or that he otherwise has been deprived of the opportunity to locate them. *See generally* Mot.; Mem. Because Head offers no evidence the witnesses would have testified, he has not shown counsel was ineffective in failing to call these witnesses under the first prong of the *Strickland* test. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000); *see also Morris v. State of Cal.*, 966 F.2d 448, 456 (9th Cir. 1991) (defendant's reliance on "wishful suggestions [of what her husband would have testified to] cannot substitute for declaratory or other evidence" in supporting her claim that counsel's decision not to call her husband to the stand was ineffective).[2]

---

[2] Although these cases involved petitions by state prisoners brought under 28 U.S.C. § 2254, they are relevant to this court's analysis because "§ 2254 is nearly identical to § 2255 in substance." *United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011); *see also Korn v.*

7

Head also asserts counsel was deficient in not reviewing all discovery before trial, but he cannot surpass the *Strickland* bar on this claim. Even if this court assumes but does not decide "counsel's failure to review the discovery materials [] f[ell] below an objective standard of reasonableness," *Crabtree v. Cate*, No. 10-9554, 2012 WL 2260916, at *8 (C.D. Cal. May 10, 2012), *report and recommendation adopted*, No. 10-9554, 2012 WL 2261116 (C.D. Cal. June 15, 2012), Head has not shown how he was prejudiced by this failure. Head does not point to instances during trial when counsel was not able to carry out effective representation because of his lack of familiarity with the discovery materials, Mem. at 15–16, and this court's own review of the trial transcript leads it to believe counsel conducted a vigorous and thorough representation. The court denies relief on this claim.

Fifth, Head argues counsel was ineffective when he chose not to retain expert witnesses for trial. Specifically, Head requested counsel retain a handwriting expert, a forensic accountant and a mortgage industry expert. Mem. at 17–18; *see also* Supp. to Mem.; Kuan Decl., ECF No. 1821. The court addresses the arguments regarding each expert in turn.

   **1.   Handwriting Expert**

Head argues a handwriting expert could have helped persuade the jury Head did not sign any of the "loan related documents the government intended to introduce at trial," some of which "included false information." Mem. at 17. Additionally, Head argues "[a] handwriting expert was necessary to eliminate the allegations of the government that clients' signatures were false on the transactions the government alleged to be fraudulent." *Id.* Even assuming Head has met the first prong of the *Strickland* test, he has not shown that but for counsel's error, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. As the government points out, its allegations were "based on his leadership over the scheme" and not any individual signatures. Opp'n at 21. The government did not have to prove Head's handwriting on the pertinent documents at trial to prove its case. *Id.*; Tr. at 1567:8–13 (instructing the jury they may

---

*United States*, 937 F. Supp. 2d 1182, 1189 (C.D. Cal. 2013) (applying § 2254 cases to ineffective assistance of counsel claims in a § 2255 case "to the extent that those precedents are apposite.").

find a defendant liable for the actions of co-defendants if they find a defendant was a member of a scheme to defraud). Head has not shown prejudice. The court denies relief on this claim.

### 2. Forensic Accountant

Second, Head argues counsel was ineffective in not retaining a forensic accountant to prepare for showing the jury, among other things, "where all of the money went during the period of the indictments," and "how equity was preserved in the title holding trust." Mem. at 17–18. Again, assuming but not deciding Head has met his burden under the first prong of the *Strickland* test, he has not met his burden under the second prong; Head has not shown how this testimony would rebut specific evidence the government provided regarding the fraudulent lending schemes and how this evidence would have resulted in a different outcome. Head's mere disagreement with counsel's tactics is not enough to meet the *Strickland* standard. *Raley v. Ylst*, 470 F.3d 792, 799 (9th Cir. 2006). The court denies relief on this claim.

### 3. Mortgage Fraud Expert

Third, Head argues counsel was ineffective because he did not retain a mortgage expert to testify that "any misrepresentations on 'stated income' and 'no doc' loans were not material in the lending industries practice." Mem. at 18 (emphasis omitted). In a supplemental memorandum, he presents the names of three potential mortgage fraud experts that counsel could have subpoenaed. *See generally* Supp. to Mem. However, he does not provide any affidavits or evidence from two of the three individuals indicating the individuals would have been willing to testify and describing what they would have testified to; therefore, he has not shown prejudice. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").[3] The court focuses only on the potential testimony of Richard Kuan, an individual with experience in the mortgage industry. Supp. to Mem.

---

[3] In fact, according to Head himself, he did not find one of the experts, Shaun Martin, until after his conviction, when he began searching for an expert witnesses for this motion. Supp. to Mem. at 4.

9

Kuan has submitted a declaration stating he would have testified at trial if contacted by counsel and would have attested to the prevalent fraud perpetrated by banks and other entities in the mortgage industry, including appraisal fraud, during the relevant period. Ex. A Kuan Decl., ECF No. 1683. Essentially, Head argues Kaun's testimony would have shown lending institutions knew the applications submitted by Head and his co-conspirators included inaccurate information but turned a blind eye. *Id.* Therefore, banks were knowingly approving these inaccurate applications and Head's inaccuracies could not have been legally "material." Supp. to Mem. at 5. But, as the government points out, Head has no legal basis for this argument; the government did not need to prove the banks' reliance on the false statements, nor is their disregard of false statements a viable defense to mortgage fraud. Supp. Opp'n at 3. The Ninth Circuit has held an individual lender's, such as a bank's, intentional disregard or negligence, "is not admissible as a defense." *United States v. Lindsey*, 850 F.3d 1009, 1012, 1016, (9th Cir. 2017). So even if Head could prove the banks knew of misrepresentations made on applications, this fact could not support his defense. Because Head's allegation does not rely on a feasible legal argument, Head cannot show counsel acted below an objective standard of reasonableness in not putting forward this legal theory. The court denies relief on Head's claim.

Head has not shown ineffective assistance of pretrial counsel, so the court denies relief on these claims. *Withers*, 638 F.3d at 1062.

**B.     Ineffective Assistance of Trial Counsel**

Head next alleges and argues counsel was ineffective during trial because he failed to: (1) present an affirmative defense and call key witnesses at trial, (2) advise Head of a conflict of interest, (3) "effectively cross examine government witnesses," and (4) give Head accurate information regarding his right to testify. Mem. at 2, 21. The court examines each claim in turn.

First, Head argues counsel defied his wishes and did not "interview, subpoena, and call key defense witnesses at trial." Mem. at 22. These witnesses include four attorneys who Head claims would have testified regarding how Head's company operated legally and how he attempted to follow the law in operating the company. *Id.* at 22–24. But Head does not provide any evidence or affidavits from these witnesses indicating they would have testified at trial or the

10

contents of their potential testimony, nor has he stated he is barred from communicating with these individuals. *See id.* Because Head has no evidence the witnesses would have testified, he has not shown counsel was ineffective in failing to call them. *Lopez*, 2009 WL 1657334, at *14. Head also argues counsel failed to present any affirmative defenses but does not specify any defenses that would have been helpful in trial or how he was prejudiced by counsel's omissions. Mem. at 23–24.

Second, Head argues counsel rendered inadequate assistance because counsel did not advise him of a conflict of interest. Head says counsel made "prejudicial statements regarding Head and his case" and failed to inform the court or Head himself of his sentiments. Mem. at 24. Specifically, Head represents counsel told his paralegal, Ms. Faria, he "hoped [Head] would lose at trial and receive a sentence of forty years." *Id.*; ECF No. 1811 at 1. Head says Ms. Faria told Head about these statements after he was convicted and sentenced. Mem. at 24. Although Head filed a separate request for leave to conduct a deposition of Ms. Faria, a request the court denied in a prior order, ECF No. 1864, he has not now included any declaration from Ms. Faria supporting this allegation. To prevail on a claim of conflict of interest, "a defendant must show an actual conflict of interest adversely affected his lawyer's performance," *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980), and "demonstrate an actual conflict through a factual showing on the record," *United States v. Baker*, 256 F.3d 855, 860 (9th Cir. 2001), *amended*, No. 99-56718, 2001 WL 474147 (9th Cir. May 7, 2001). In other words, Head must "demonstrate[] that [counsel] performed poorly *because of* the alleged conflicts." *Mayfield v. Woodford*, 270 F.3d 915, 925 (9th Cir. 2001) (emphasis in original). Here however, Head does not point to any actual conflict. Instead, he claims if he had been aware of counsel's feelings, he would have requested new counsel and the court would have held an evidentiary hearing regarding counsel's representation. Mem. at 24. Even assuming he conveys what Ms. Faria actually told him, Head points to no acts or omissions from counsel that were inadequate or ineffective because of counsel's alleged conflicted feelings towards Head. The record, to the contrary, shows counsel zealously litigated Head's defense. For instance, counsel made many pertinent objections during witness examinations, *see, e.g.,* Tr. at 222, 235, 345, 556, and thoroughly cross examined and impeached

11

witnesses, *see, e.g., id.* at 268–87.  Because Head does not support his cursory allegation of ineffective assistance due to his counsel's alleged prejudice with any evidence, he has not met the first prong of the *Strickland* test.  *Strickland*, 466 U.S. at 690.

Third, Head claims counsel did not effectively cross examine Kou Yang, a government witness.[4]  Mem. at 25.  Specifically, he argues counsel should have questioned Yang about the alleged "misrepresentations made to homeowners regarding the transfer of title to their homes." *Id.*  In other words, he argues counsel should have pressed Yang in support of the defense that the homes could have been repurchased by the victim homeowners.  *Id.* at 25; Opp'n at 29–30.  But "counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference and must [] meet only objectively reasonable standards." *Dows*, 211 F.3d at 487.  Additionally, "[m]ere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States*, 627 F.2d 901, 904 (9th Cir. 1980).

Assuming the strategy to show homeowners could have repurchased homes was legally plausible, counsel did pursue this strategy throughout trial, including in the defense's arguments to the jury and in cross examinations of other witnesses.  *See* Tr. at 1036, 1522–23; *see also* Opp'n at 30.  Because counsel was aware of the availability of this line of questioning and chose not to focus on it during his cross examination of Yang, the court can infer the choice reflected a strategic judgment call. *Williams v. Schriro*, No. 06-3058, 2009 WL 42265, at *9 (D. Ariz. Jan. 7, 2009) (if "tactical decisions regarding" cross examinations "were supported by reasonable professional judgment, they do not constitution deficient performance").  Head has not shown why counsel's strategy to pursue this defense in other areas of the case instead of cross-examining Yang falls below the presumptive standard of reasonableness, so he has not met the first prong of the *Strickland* test.

---

[4] Head also argues counsel did not effectively cross examine John Corcoran, Mem. at 25, but Corcoran was not called as a witness at the trial, *see generally* TR, and as such counsel had no opportunity to cross examine him.

Fourth, Head argues that although he wanted to testify on his own behalf at trial, counsel incorrectly informed him and his brother, another defendant in the case, if they testified and lost at trial "they would be automatically charged with perjury or . . . obstruction of justice . . . which would result in" extra jail time. Mem. at 27. The court disregards Head's claim regarding his brother as irrelevant to his motion. Even taking Head's assertions as true and assuming counsel's actions qualified as incompetent under "prevailing professional norms," *Harrington*, 562 U.S. at 105, he has not met his burden to prove that but for counsel's errors, he would not have been found guilty, *Strickland*, 466 U.S. at 693–34. Head has not indicated what testimony he would have provided and how this testimony would have rebutted the government's overwhelming evidence such that it would have been likely for a jury to find him not guilty. *See* Mem. at 27–28.

Because Head has not stated any viable claim for ineffective assistance of trial counsel, the court denies relief on these claims.

### C. Ineffective Assistance of Sentencing Counsel

Head alleges and argues counsel was ineffective at sentencing because he failed to: (1) "[r]equest an evidentiary hearing" regarding the total losses at issue, (2) "file specific objections to the presentence report, and (3) prepare Head to show remorse at the sentencing hearing. Mem at 2–3, 28. The court will examine each claim in turn. To prevail, Head must show sentencing counsel's performance was "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Arreola v. Premo*, No. 6:15-01013, 2019 WL 1323591, at *4 (D. Or. Feb. 12, 2019), *report and recommendation adopted*, No. 6:15-CV-01013-YY, 2019 WL 1320036 (D. Or. Mar. 20, 2019) (quoting *Harrington*, 562 U.S. at 103).

First, Head claims that if counsel had requested an evidentiary hearing to determine the exact "real estate transactions [and mortgage transactions] he was being held accountable for" and the sufficiency of the government's evidence for those transactions, "there is a reasonable probability that the outcome of [his] sentencing would have been different." Mem. at 28. Here, as outlined in the opposition brief, the government says it relied on an "extremely conservative loss number," Opp'n at 34; *see also* ECF No. 974 at 3–4, citing as well to testimony elicited

13

during trial, ECF No. 974 at 4, which the jury heard. If counsel had requested an evidentiary hearing, the government could have instead argued for a more aggressive number. *See* Opp'n at 34. It is plausible that instead of taking this risk, counsel decided based on "reasonable professional judgment" to avoid an evidentiary hearing. *Strickland*, 466 U.S. at 690. And even if counsel's decision to not request an evidentiary hearing "deviated from best practices or most common custom," *Harrington*, 562 U.S. at 105, Head himself points to other arguments that his counsel made during sentencing to reduce Head's sentence, Mem. at 28–29, and the court notes counsel made various challenges during the sentencing portion of Head's trial, Sent'g Tr. at 39, ECF No. 1058. Head has not pointed to any facts to overcome the "highly demanding" *Strickland* standard and has not shown counsel's representation amounted to incompetence. *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

Second, and in a similar vein, Head argues counsel should have hired a forensic accountant to rebut the government's total loss amount calculations. Head argues because counsel did not rebut the government's numbers with his own set of numbers, the court had no alternative to evaluate, so Head's restitution ordered as part of his sentence was harsher than necessary. Mot. at 29. However, Head has not shown counsel's decision was "incompetence under prevailing professional norms." *Harrington*, 562 U.S. at 105. As discussed above, counsel has wide latitude to make strategic decisions regarding a case, even if Head did not agree with counsel's strategy. Here, a review of the sentencing transcript shows while counsel did not rebut the numbers themselves, counsel instead challenged the government's grouping of the numbers, namely the way in which the government categorized the different homeowners and lenders and their loss numbers. Sent'g Tr. at 39, ECF No. 1058. Additionally, counsel spent much of the sentencing hearing focusing on arguments regarding double jeopardy, *see e.g., id.* at 12, 21–24, as well as objecting to the government's characterization of Head's previous criminal conduct and a prior firearms conviction, *id.* at 13, 28–29, 32, 35. Counsel also argued vigorously for a shorter sentence, focusing on how the government's recommendation of 40 years would be "incredibly overreaching for the conduct" and how a much shorter sentence of 15 years would still be a long sentence but more appropriate, considering all the relevant factors. *Id.* at 43–46. Counsel's

argument was skillful in that he was not blind to the serious charges Head was convicted of—"I'm not coming into this court offending the process by saying Mr. Head should get 42 or 60 months"—but instead appealed to the court's interests in balancing the severity of the crime with the relevant factors. *Id.* at 44. In reviewing counsel's approach in light of his strategic leeway, the court finds counsel did not render assistance below the "highly demanding" standards set forth by *Strickland* and denies relief on Head's claim. *Kimmelman*, 477 U.S. at 382.

Third, Head argues counsel should have prepared Head to "show some remorse in mitigation of his sentence." Opp'n at 29. This argument is without merit. Head maintained his innocence throughout trial and sentencing. *See* Sent'g Tr. at 51, 54. Counsel would have been aware that it could have come across as insincere for Head to suddenly claim remorse at sentencing, particularly if doing so seemed coached. Even if it were counsel's duty to inform Head to appear remorseful, Head cannot show he was prejudiced by counsel's omission. After the government pointed to Head's lack of remorse during the sentencing hearing, *id* at 42, the court gave Head an independent opportunity to allocute, which he did not take, *id.* at 50. Fundamentally, nothing stood in the way of Head's making his own, authentic statement when provided the chance to allocute; if he felt remorse at the time he could have expressed that to the court.

Head has not shown ineffective assistance of sentencing counsel claim on which he can bring a successful 2255 motion, so the court denies relief on these claims.

**D.  Ineffective Assistance of Appellate Counsel**

Head also argues his appellate counsel was ineffective because counsel did not challenge the denial of Head's motion to dismiss based on duplicity or the court's overruling of objections to the Presentence Report. Mem. at 30.

Appellate counsel need not raise every point the client requests "if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Here, Head himself recognizes appellate counsel raised three issues on appeal, Mem. at 31; in doing so, counsel "winnow[ed] out weaker arguments . . . and focus[ed] on . . . a few key issues," *Jones*, 463 U.S. at 752. Head cannot claim ineffective assistance of counsel merely

15

1   because counsel did not abide by all of his requests.  Nothing in the record allows a conclusion
2   appellate counsel did not make a reasonable decision in choosing which challenges to raise.  Head
3   has also not shown the decision by counsel to not pursue all the issues Head requested prejudiced
4   the outcome on appeal.  Head has failed to overcome the presumption of appellate counsel's
5   adequate assistance in making judgments regarding the issues appealed in his case, and the court
6   denies relief on these claims.  *Palomba*, 31 F.3d at 1460.

## IV.  SIXTH AMENDMENT CLAIMS

8   Lastly, Head claims the government "intentionally intruded" into Head's relationship with
9   his attorney when it confiscated his legal materials and communications with his attorney from
10  his cell.[5][6]  Mem at 18.  Head originally raised these claims before the trial judge in a motion to
11  suppress.  *See* Mot. to Suppress, ECF No. 297.  The court set an evidentiary hearing to allow the
12  record to be developed regarding whether the government would use any of the information it
13  might have gained from the legal materials in their case-in-chief, ECF No. 300, and the
14  government filed a response stating it would "not seek to use the seized [material] that form[ed]
15  the basis of [d]efendant's motion in its case-in-chief or in any future pre-trial detention
16  proceeding," ECF No. 320 at 2.  Based on the government's concession, the court vacated the
17  evidentiary hearing and denied Head's motion as moot.  ECF No. 321.  Head did not raise this
18  issue again before the trial judge or on appeal and does not now allege or argue cause and actual
19  prejudice or actual innocence.  *See generally* Mem.  As such, Head procedurally defaults on this
20  claim.  *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant
21  procedurally defaults his claims by not raising them on direct appeal and not showing cause and
22  prejudice or actual innocence in response to the default.").  Thus, the court denies relief on this

---

[5] Head has a pending civil action against the County of Sacramento regarding these claims.  *See Head v. County of Sacramento et. al*, Case No. 2:19-cv-01663-TLN-KJN.

[6] Head also makes a conclusory claim that the government listened in on phone calls between defendant and his attorney.  Mem. at 18.  However, Head cannot point to what phone calls were overheard, or what information the government received.  Rather, he makes only a generic, one sentence long, allegation.  The court denies Head's petition on this claim.

claim and does not reach the government's alternative request to seek a limited waiver of Head's attorney-client privilege.

## V.     CONCLUSION

For the reasons above, the court **denies** Head's § 2255 motion.

This order resolves ECF No. 1821 (*Head* I).

IT IS SO ORDERED.

DATED: October 6, 2023.

_____
CHIEF UNITED STATES DISTRICT JUDGE